IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:15-CV-065-RLV-DCK

| | |
|---|---|
| HERSHEL W. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 14) and "Defendant's Motion For Summary Judgment" (Document No. 16). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Hershel W. Jones ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On August 27, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning February 21, 2012.[1] (Transcript of the Record of

---

[1] Plaintiff contends that Plaintiff also applied for Title XVI Supplemental Security Income; however, the record does not appear to support that contention. (Document No. 15, pp.1-2).

Proceedings ("Tr.") 18, 32, 243). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on November 15, 2012, and again after reconsideration on January 7, 2013. (Tr. 32, 111-119, 126-133). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 126).

Plaintiff filed a timely written request for a hearing on January 30, 2013. (Tr. 32, 134-135). On May 5, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge Jane A. Crawford ("ALJ"). (Tr. 32, 45-78). In addition, Leanna L. Hollenbeck, a vocational expert ("VE"), and Michelle Pritchard, Plaintiff's attorney, appeared at the hearing. Id. Also on May 5, 2014, Plaintiff amended his alleged onset date of disability from February 21, 2012, to August 15, 2013. (Tr. 32, 48-49, 259).

The ALJ issued an unfavorable decision on November 7, 2014, denying Plaintiff's claim. (Tr. 29-44). On December 16, 2014, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on March 26, 2015. (Tr. 2-4, 18-21). The November 7, 2014 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 22, 2015. (Document No. 1). On September 1, 2015, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 14) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 15) were filed November 13, 2015; and "Defendant's Motion For Summary Judgment" (Document No. 16) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 17) were filed January 4, 2016. Plaintiff declined to file a response/reply brief as allowed by the Court's "Social Security Briefing Order" (Document No. 1), 3:13-mc-198-FDW (W.D.N.C. Dec. 23, 2013).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than

3

create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 15, 2013, and the date of her decision.[2] (Tr. 32). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 42-43).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 15, 2013, his amended alleged disability onset date. (Tr. 34). At the second step, the ALJ found that status post hip replacement for avascular necrosis of the left hip, degenerative disc disease and facet arthropathy of the lumbar spine with stenosis, obesity, borderline

intelligence, major depression and a generalized anxiety disorder, were severe impairments.[3] (Tr. 34). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 35).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> limited to pushing and/or pulling with the lower extremities on less than an occasional basis; frequently climbing ramps and or stairs, balancing and stooping; no climbing of ladders or scaffolds; occasionally kneeling, crouching and crawling; and no work at unprotected heights or around dangerous machinery. He needs the option to stand for a few minutes a couple of times per hour. Additionally, the claimant is limited to performing simple, routine and repetitive tasks and can tolerate frequent contact with coworkers and supervisors but only occasional contact with the public.

(Tr. 37). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ also stated that she considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a laser beam machine operator or machine maintenance servicer because he is limited to unskilled work; and that he could not perform his past relevant work as a filter assembler because he needs the option to stand twice an hour. (Tr. 42).

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 42). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included mail clerk, laundry worker, and newspaper deliverer. (Tr. 43). The ALJ also observed that the vocational expert testified that even if the claimant was restricted to performing the demands of 'sedentary' work with additional limitations set forth above, he could still perform the requirements of representative occupations as telephone order clerk, surveillance system monitor, and ink printer. Id.

Based on the foregoing, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 15, 2013, the amended alleged onset date, and the date of her decision, November 7, 2014. (Tr. 43).

On appeal to this Court, Plaintiff identifies the issue presented as "whether the ALJ properly evaluated Plaintiff's credibility regarding limitations from pain and the resultant RFC." (Document No. 15, p.4). The Court will discuss the parties' arguments below.

**Plaintiff's Credibility and Pain**

This Court has recently noted that "in reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner." Jenkins v. Colvin, 5:15-CV-010-FDW, 2016 WL 4373701, at *8 (citing Craig, 76 F.3d at 589). "The ALJ, not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts." Id. (citing Hays, 907 F.2d at 1456). "The ALJ is thus able to make credibility determinations so long as they are supported by substantial evidence." Id.

7

In assigning error, Plaintiff argues that the ALJ failed to properly weigh Plaintiff's credible pain complaints when assessing his RFC, and that "[t]his error is significant because . . . his pain limits his functioning more than any other symptom of his conditions." (Document No. 15, p.2).

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing
>
> > the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*
>
> 20 C.F.R. §§ 416.929(b) & 404.1529(b) (emphasis added); *cf.* 42 U.S.C. § 423(d)(5)(A) ("[T]here must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged....") . . . . Therefore, for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers.*
> . . .
> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996).

Here, the ALJ opined that after "careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not *entirely* credible for the reasons explained in this decision." (Tr. 38) (emphasis added). Then, as Plaintiff acknowledges, the ALJ opined that:

> [h]is testimony regarding the persistence of his pain was consistent with the medical evidence showing complaints of chronic pain; however, his testimony and subjective statements regarding the intensity and limiting effects of his pain and other symptoms was not credible because it was inconsistent with the medical evidence and his activities of daily living.

(Document No. 15, pp.4-5) (quoting Tr. 38).

In support of his motion, Plaintiff goes on to recognize that the ALJ discussed Plaintiff's activities of daily living and stated that such activities were inconsistent with the Plaintiff's allegations of debilitating pain. (Document No. 15, p.5) (quoting Tr. 40). Although the ALJ cited to evidence in the medical record and Plaintiff's testimony at the hearing, Plaintiff concludes that the "ALJ's argument is not persuasive." See (Tr. 39-40) (citing Tr. 269-279, 506, 508, and 516); see also (Document No. 15, p.5). Plaintiff suggests that his activities of daily living are so undemanding, or limited, that they do not bear a meaningful relationship to activities in the workplace. (Document No. 15, pp.5-6) (internal citations omitted). Moreover, Plaintiff argues that the ALJ failed to consider his "qualifications of those activities." (Document No. 15, p.6). For example, Plaintiff contends that he can only do chores for a few minutes at a time, and that he performs them at a very slow pace, due to his pain. Id.

Next, Plaintiff contends that the ALJ fails to explain how the medical evidence translates to the RFC finding. Id. Plaintiff then summarizes medical evidence that "reveals conditions reasonably likely to result in the type of pain Mr. Jones described at the hearing." (Document No.

9

15, p.7). Plaintiff argues that "under the regulatory factors of ADLs, location, frequency and intensity of pain, factors which aggravate symptoms, medical opinions and effectiveness of treatments, Mr. Jones' testimony should have been considered credible." (Document No. 15, p.8) (citing SSR 96-7p). Plaintiff concludes that the ALJ "only denied his claim by improperly extrapolating an ability to perform sustained work activity from evidence of minimal ADLs" and by finding Plaintiff's alleged "limitations were not supported by the objective medical evidence." Id.

Finally, Plaintiff asserts that the ALJ improperly found Plaintiff less credible because he had gaps in his treatment, and that the ALJ failed to consider Plaintiff's strong work history in the credibility analysis. (Document No. 15, p.8). Plaintiff argues that he was "unable to continue treatments he had previously availed himself of due to his loss of medical insurance," and thus, the ALJ should not penalize him for failing to seek treatment he could not afford. Id. (citing Tr. 53-54). In addition, Plaintiff argues that his long, uninterrupted earnings record should have been considered in the credibility determination. (Document No. 15, p.9).

In response, Defendant engages in a comprehensive discussion of the ALJ's decision and the record.[4] (Document No. 17, pp.4-18). First, Defendant asserts that although Plaintiff testified that his most recent employment in 2012 was very painful, such testimony is of limited relevance because the difficulties described did not prevent him from completing the work. (Document No. 17, p.5) (citing Tr. 51-52). Defendant notes that Plaintiff did not quit, nor was he fired; rather, he was laid off. Id. (citing Tr. 51). Defendant further notes that Plaintiff has amended his alleged onset date to August 15, 2013, thereby conceding he was not disabled in 2012. Id. (citing Tr. 32,

---

[4] The undersigned observes that Defendant's memorandum, similar to Plaintiff's first memorandum, does not strictly comply with the Court's "Social Security Briefing Order" (3:13-mc-198-FDW, Document No. 1). See (Document No. 13).

259).  Also, in the context of his employment, Plaintiff was lifting 60 to 70 pounds, much more than that allowed by the light work RFC determined by the ALJ in 2014.  Id. see also, (Tr. 37).

Regarding activities of daily living, or "ADLs," Defendant argues that substantial evidence does support the ALJ's finding that Plaintiff's allegations of debilitating pain and mental limitations are inconsistent with his activities of daily living.  (Document No. 17, p.15) (citing Tr. 38-40).  Defendant notes that the ALJ specifically cited a report from Plaintiff's wife that he watched television, fed the cat, cooked some, washed dishes, did some laundry and non-strenuous house cleaning.  Id. (citing Tr. 39) (citing Tr. 269-279).  Melissa Jones' "Function Report – Adult – Third Party," dated September 9, 2012, further described that Plaintiff did some minor household repairs, drove a car, rode in a car, shopped in stores if it was quick, and attended his daughter's sporting events and high school football games.  (Tr. 271-73); (Document No. 17, p.15).

Defendant further shows that the ALJ's opinion cited Dr. Leo Young's findings in July 2014, that Plaintiff could perform light household chores including laundry, was able to shop, travel without assistance, ambulate without a wheelchair, walker, canes or crutches, use public transportation, prepare simple meals, and care for personal hygiene.  (Document No. 17, pp.15-16) (citing Tr. 39-40) (citing Tr. 506-508).  The ALJ further noted that Plaintiff reported similar activities to Rebecca Church, M.A., L.P.A. in July 2014, and testified at the hearing that he watches television, walks his dog some, and occasionally spends time with his daughter.  (Document No. 17, p.16) (citing Tr.40) (citing Tr. 58-61, 516).

Defendant argues that the ALJ's conclusion that Plaintiff's "ability to engage in such activities are inconsistent with his allegations of debilitating pain and his inability to perform such regular movements as lifting, bending, sitting, walking and maintaining attention" is reasonable and consistent with the medical evidence.  (Document No. 17, p.16).  Defendant further argues

that this is especially true since "Plaintiff has offered little, if any, relevant evidence supporting limitations in excess of those of the RFC finding," and Plaintiff "bears the risk of nonpersuasion." Id. Defendant also re-asserts that it is up to the "ALJ to resolve inconsistencies in the evidence," and that "the ALJ's determinations concerning credibility are to be given great weight." (Document No. 17, pp.16-17) (quoting Rode v. Colvin, 1:13cv252-GCM, 2014 WL 6617261, at *2 (W.D.N.C. Nov. 21, 2014)).

The undersigned finds no error in the ALJ's consideration of activities of daily living. Plaintiff disagrees with how the evidence has been weighed, but the undersigned is not persuaded there is sufficient cause to reverse or remand the ALJ on this point.

In addition, Defendant addresses Plaintiff's argument that "the ALJ failed to 'explain how [the medical evidence] translates into her RFC,'" and states that "the ALJ provided ample explanation for her RFC finding." (Document No. 17, p.9) (citing Document No. 15, pp.6-7). As noted by Defendant, the ALJ first discussed medical evidence from 2009, when Plaintiff's physical impairments were generally established, on or about the time of a total hip replacement on April 9, 2009. (Document No. 17, pp.9-10) (citing Tr. 38). The ALJ noted that Plaintiff "was reported as doing extremely well," "walking without a limp and released to drive" on April 24, 2009. (Tr. 38) (citing Tr. 465). In May, Plaintiff noted some soreness but was working 60 hours a week. Id. (citing Tr. 464).

The ALJ opinion also provides the following discussion of Plaintiff medical records from the rest of 2009:

> In July 2009, the claimant was reported as being able to run without much discomfort. Exhibit l0F/11. In December 2009, the claimant reported that he was able to be persistent and work 60 hours a week despite having to take pain pills. He also noted that he was not interested in any surgical intervention despite his back pain as he was really able to work and function quite well. The claimant stated

12

> he did not think his back was bad enough to have a fusion. Exhibit l0F/ 1.

(Tr. 38) (citing Tr. 452, 462).

As Defendant notes, the ALJ also observed that in October 2012, after Plaintiff had been laid off and after his original disability onset date, Plaintiff's "musculoskeletal and neurological exams were completely normal except for some grinding of the left knee with range of motion and slight reduced range of motion of the spine and left knee." (Document No. 17, p.10) (quoting Tr. 38) (citing Tr. 364-367). The ALJ observed that in 2011 and 2013 Plaintiff "had pain and tenderness to palpation of the lumbar spine and hips, but examinations, including range of motion and gait, were normal." (Tr. 38) (citing Tr. 334, 432, 435-436).

In his decision, the ALJ remarked that there "are very limited medical records relevant to the period in question" and there "was no treatment from early 2013 until February 2014." (Tr. 38). As noted above, Plaintiff's amended onset of disability date is August 15, 2013. (Tr. 32). Defendant and the ALJ recognize that Plaintiff was treated in an emergency room after falling on and spraining his left knee. (Document No. 17, p.10); (Tr. 38). Plaintiff did not require further treatment of this condition. Id. (citing Tr. 38-39) (citing 437-450).

Plaintiff "was not treated again until he saw Dr. Young, a consultative physician, in July 2014." (Tr. 39); (Document No. 17, p.10). Defendant asserts that

> [a]lthough Dr. Young noted some abnormal findings, such as antalgic gait, limited range of motion in the hips and spine, and positive straight leg-raising, he found Plaintiff could ambulate without difficulty and without an assistive device, could get on and off the exam table with minimal assistance, had no signs of imbalance, and had generally normal motor strength and sensory reflex exams.

(Document No. 17, p.10) (citing Tr. 39) (citing Tr. 509-510). Next, Defendant contends that the ALJ properly explained that Plaintiff's inconsistent treatment supported her credibility determination:

> A claimant's failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling. Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992).

Id. (citing) (Tr. 39).

As to the ALJ's support of the RFC from the medical evidence, Defendant concludes that the ALJ properly evaluated the opinion evidence. (Document No. 17, p.11). The ALJ noted that "[n]one of the claimant's treating physicians have imposed specific functional limitations," and that Dr. Swisher's April 2014 opinion is either conclusory and entitled to little weight, or not a cognizable medical opinion entitled to any weight at all. Id.; (Tr. 40). The ALJ gave some weight to Dr. Young's opinion indicating Plaintiff was limited to sedentary work, but gave more weight to the findings of the State agency medical consultant that Plaintiff could perform light work. Id.

The undersigned agrees with Defendant that the ALJ provided ample support, including citation to substantial evidence, in explaining how the medical evidence translates to the RFC determination. See (Tr. 38-40).

Regarding Plaintiff's gaps in treatment and lack of insurance, Defendant argues that the record of evidence contradicts Plaintiff's arguments. (Document No. 17, pp.6-8). Defendant notes that in September 2009 Plaintiff declined to pursue back surgery when he was working and had health insurance, even though Dr. Norcross seemed to recommend it. (Document No. 17, p.6) (citing Tr. 454). Moreover, as noted by the ALJ, Plaintiff later stated in or about December 2009

14

that he was not interested in surgical intervention and was "really able to work and function quite well." Id.; (Tr. 38)(citing Tr. 452).

Defendant observes that the ALJ specifically noted Plaintiff's lack of insurance for mental health treatment and that there are limited medical records for the time period in question. Id. (citing Tr. 37-38). Defendant further observes that Plaintiff worked and had medical insurance until 2012. (Document No. 17, p.7). Defendant then notes that despite his lack of insurance, Plaintiff testified that he was still able to get and take his medicines, and that he tried to see his family doctor, Dr. Swisher, once a month – which is how he gets his prescriptions. (Document No. 17, p.8) (citing Tr. 56, 62). In fact, Plaintiff testified that he had been seeing Dr. Swisher for 15 or 16 years, with no apparent difficulty due to insurance or financial resources. (Tr. 63).

Based on the foregoing, the undersigned is persuaded that the ALJ was well-aware of Plaintiff's access to treatment. The undersigned disagrees that the ALJ erred in finding that Plaintiff's treatment history contributed to a determination that he was not *entirely* credible.

Finally, Defendant argues that the ALJ explicitly considered Plaintiff's work activity in conjunction with his alleged symptoms, and that Plaintiff admitted that the reason he stopped working in 2012 was that he was laid off. (Document No. 17, p.8) (citing Tr. 38, 51). Defendant further suggests that Plaintiff was collecting unemployment benefits, and that doing so is an acceptable factor in determining "that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability." Id. (quoting Clark v. Astrue, 3:12-cv-122-MOC, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012)).

The undersigned again agrees with Defendant that Plaintiff's argument does not provide sufficient cause for remand. The ALJ opinion indicates that she was aware of Plaintiff's work

15

history, and it does not appear that she erred by allegedly failing to give more weight to that history. As previously noted, it is not for the Court to re-weigh the evidence, if the ALJ decision is supported by substantial evidence. In this case, as discussed above and as otherwise argued in Defendant's brief, it appears the ALJ's decision is thorough and well-supported. The undersigned is not convinced that the ALJ improperly evaluated Plaintiff's credibility, pain, and/or residual functional capacity.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 14) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 16) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and

Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: September 2, 2016

David C. Keesler
United States Magistrate Judge